The next matter, No. 24-1204 and No. 24-1696, Lentzel Hodzic et al. v. Pamela J. Bondi. At this time, would counsel for the petitioners please introduce themselves on the record to begin? Good morning. Melanie Shapiro for the petitioners. At this time, may I reserve two minutes for rebuttal? You may. Thank you, Your Honor. Good morning, Your Honors. Today, this Court has asked to review the Board's denial of unopposed motions to reopen to apply for cancellation of removal and a motion to reconsider sua sponte. This case is about the fate of the Hodzic family, Mr. and Mrs. Hodzic. The petitioners have been in the U.S. for 25 years fleeing genocide as Bosniaks. This case presents Mrs. Hodzic, who has extraordinary medical conditions. She is on the liver transplant list. She has end-stage liver failure and Wilson disease. Mr. Hodzic and their three U.S. citizen children have been here, have not had any criminal issues, and have been good members of the community. And this case has been dragging on for a very long time. Let me ask you, the medical condition itself, it appears in looking at the BIA decision, at the immigration judge's decision, there seems to be like no mention of that. Would that be grounds for remand so that can be considered? Absolutely, Your Honor. So there are a number of issues in this case. One of the glaring issues is how can this situation with such extraordinary medical circumstances entice the U.S. not be considered exceptional in order to reopen the case to apply for cancellation of removal, a newly available form of relief. And because there has been a treatment of exceptional circumstances in Suspente, kind of unfettered discretion, there is no standard that has existed. But the board should have been applying the standard that does exist in the Immigration and Nationality Act in 1229A. But it has not failed to do so. Nonetheless, the failure to provide any sort of meaningful explanation here cannot provide enough information, as the court recently said, to illuminate the court's reasoning for appellate review. Because the BIA solely stated that it considered the motions and the supporting documents, which included all of the medical records, over 100 pages of that, and enticed the committee and so forth. There was ample evidence to show prima facie eligibility for cancellation. But in saying that it considered that without anything more, that there is no reasoning to which the court can ascertain how it arrived at its conclusion. Counsel, what is, as you know, because this is a Suspente reopening request, we can only review it for legal or constitutional error. So what is the legal error that you would ask us to focus on in our review? That's the only thing we have jurisdiction to review. Yes, Your Honor. So a couple of responses to that. First, if you're looking at this solely of abusive discretion or legal error, the legal error, Your Honor, is that this is a set of undisputed facts by which the board had applied law. And I understand that this has historically been treated as purely discretionary termination. But that, in my opinion, is wrong. The board should have been following its own law, which is that there is that definition of exceptional circumstances within the INA that governs motions to reopen. And there is a tie between the statutory definition of that and the regulations, which I understand that the regulations are the only place that mention that the board may at any time reopen a case, which is the Suspente authority. However, if you look at the connection between the statute and the regulations here, Congress enacted the INA and then authorized the Attorney General to promulgate regulations, which it did so in 1996. And by virtue of those regulations, that is the interpretation of the statute by what it means and how the procedures there flow from. Is there any other legal ground besides that one? Yes, Your Honor. So, as you've seen in my brief, I've spent a lot of time talking about Loper-Bright and its implication in this matter. And in Loper-Bright, the court was looking at, it overturned Chevron and that deferential treatment for agency determinations of their statutory interpretations. But my argument is that this is a statutory interpretation because, as I previously mentioned, how the regulations flowed from the Attorney General's authority to the agency to promulgate these regulations. This is an interpretation of that. And this court has addressed this issue tangentially in Sutherland this year, in which it did provide de novo review of this connection between the statutes and the regulations. You have two others that I want to run through before your due process argument. Yes. This is a legal argument. You say the BIA's determination is arbitrary and capricious? Yes. Can you just help me understand what the… Sure, absolutely. As I stated in my opening, how can a court possibly find that this is not an exceptional circumstance with these severe conditions? And I would say that that is an arbitrary and capricious holding, particularly because there is no reasoning to it. Is that dependent then on us agreeing with your first proposition that they were subject to the exceptional circumstances test from the statute? No, it is not. So in the significance of the exceptional circumstance, then it's coming from where? Well, I mean, it is significant. I think that those are two separate issues. One issue is that the board has not used this definition, which it should have been using all this time. However, regardless of that, there has been complete unfettered discretion, carte blanche, to the agency to decide what is and is outside of this line, who is and who is not exceptional. And this is not within the agency's expertise, which then ties in low propriet.  One last… You also say the BIA failed to consider that a fundamental change in case law. Yes, Your Honor. And in those paragraphs, you say, in this decision, the BIA does not address the Hodzik's argument. That it should reopen their case based on a fundamental change in law. What is the change in law you had in mind there? Your Honor, there's a continuing change in law from starting with Pereira v. Sessions in 2018 and continuing until Nis-Chavez is an additional form of intervening case law. The reason why it's a continuing change to consider is that from the Pereira case, there were a number of cases trying to determine what that actually meant. And it really didn't shake out until probably late 2019. And we did exercise due diligence in filing that motion to reopen the court in 2020, because once everything shook out, and we did file that motion within a few months, Your Honor. Counsel, can I ask you, I understood your argument about the change in law, and I appreciate you making that point, but when I read the BIA's decision, and I'm just going to try and reference it for you here, I read the decision to be saying that even if, well let me back up for a moment, the change in law had to do with eligibility for a cancellation of removal, correct? Yes, Your Honor. Do you think that your clients became newly eligible for it? Yes, and just to put in a point here, with Souspande reopening, the courts have considered changing case law, as a new relief for eligibility and exceptional personal circumstances, and a matter being within the interest of justice. So it seemed to me that what the agency said in essentially the last paragraph of the decision is that, and I'm quoting here, the regulation that's at issue here, the Souspande reopening regulation, also provides that the board has discretion to deny a motion to reopen, even if the moving party has established a prima facie case for relief. And under all of the circumstances here, the agency concluded that it wouldn't exercise its discretion to grant Souspande reopening. So my question for you is, do you think it's reasonable to read the agency decision to be saying, even if we looked at the change in law and concluded that your clients were eligible for cancellation of removal, we can still exercise our discretion to deny Souspande reopening, and that's what we're doing here. Do you disagree with that reading of what the agency said in its decision? Not necessarily, Your Honor, but the problem is that, well, how would there be any sort of check on what that unfettered discretion is? And that's where we have, if you look in Wilkinson, which did not address Souspande on point, but did look at this two-step review of, yes, there's a legal analysis of the statutory requirements, but there's also this discretionary part, and when you apply undisputed facts to some law, then it is a mixed issue, which then becomes de novo review. Any further questions? Just one quick question. Had the agency decided not to exercise discretion, not reopen this, you wouldn't have a case, right? It's just because it decided to reopen and then deny what you requested, right? Can you repeat that, Your Honor? Because the agency had discretion to consider reopening this another time. They didn't have to do it, correct? Right. It depends, Your Honor. It considered everything and then it denied it. Well, sure, but nonetheless, if you look at the settled course of adjudication, there has been a practice of the court reopening cases for new forms of relief or intervening case law, and I understand the government and likely the court's concern, the board's concern, certainly, that a lot of the cases mentioned are unpublished cases. However, we don't have any other way to show a settled course of adjudication because if there's no review for this historically, then there are no cases to interpret it. And the case law that we have is very limited, but it does say that there is judicial review of sua sponte determinations, which you can see in JJ, in matter of GT, and so forth. Thank you. And just if the court is wondering, okay, well, what happens if we do remand this? What can possibly happen for the family? Well, there is a solution here. The youngest child will turn 21 in October, so that is the last qualifying relative statutorily. However, there has been an undue delay in this case. But setting that aside for a moment, if your honors remand this to the board expeditiously, and we do get this in front of an immigration judge, there still is time for them to be granted cancellation of removal. You can request an expedited hearing, and you can also then request to expedite a visa, because there are a limited number of visas available each year for these types of cases. And these are set aside for extraordinary circumstances. And I don't know what is more extraordinary than this, given the personal circumstances. When the child turns 21, can that be a new basis for a motion to reopen, if there is an application at that point based on that change in the age of the child? Yes, your honor. So we do have pending family petitions for the petitioners from their daughter who turned 21, Emma. When did that happen? Post the BIA decision? That we filed post, yes, your honor. We filed that in November of the last year. However, the problem that we have with the Hotziks case is that they made one big mistake when they came to the United States. When they were fleeing the aftermath of the genocide in former Yugoslavia, they had to use illegitimate passports to be able to get through NATO checkpoints to then get to the United States to seek refuge. And because of this, this has haunted them ever since. They applied for asylum, no luck there because there was a change in government. The husband, Mr. Hotzik, who is a very accomplished mason, had an approved employment-based visa. However, he could not adjust his status because of this. And so this is where we are. This case has been going on for a long time, I understand. The government does argue that they did have due process because they were able to do all of this. However, they never had the chance to apply for cancellation before because it wasn't available. So this is, the Rodney aliens do have some limited constitutional rights. Is this a way of saying, just so I'm following, that it's unlikely they'll be able to adjust status based on the child becoming 21? Right, and that's the whole thing, is that I did try to push that case unavailingly. But the best chance of success and the only chance of success, the only chance to protect this due process, right, to apply for this form of relief, is to expeditiously remand this to the BIA with instructions to send it back down expeditiously to the court where I can then file a motion to expedite the case, expedite the visa. That's their only chance. And as her doctor said, if she doesn't get proper care, she will die. It's a very life or death situation. Thank you. Thank you. Thank you, counsel. At this time, would counsel for the government please introduce herself on the record to begin? Good morning, your honors. May it please the court, Taryn Arbeiter for the respondent, the United States Attorney General Pamela Bondi. This court should deny the consolidated petitions for review for three reasons. First, petitioners concede that their motion to reopen was untimely and numerically barred and that their only option was to apply for a sua sponte reopening with the board. This is an entirely discretionary form of relief, and this court lacks jurisdiction to review the board's denial. Second, the petitioners don't raise any colorable legal or constitutional challenges to restore this court's jurisdiction over the petition for review. And finally, the petitioners have not challenged the board's denial of the reconsideration motion. Starting with the issue that this court does not have jurisdiction over the sua sponte denial. This court has stated consistently over and over again that there is no jurisdiction over the question of a sua sponte denial, and especially over the board's determination that there was no truly exceptional situation warranting reopening. This court explained, first of all, in Louise in 1996, that the decision of the board whether to invoke its sua sponte authority is committed to its unfettered discretion because there are no judicially manageable standards against which to judge the agency's discretion. And indeed, the very nature of this claim renders it not subject to judicial review. And this court has affirmed that again recently in Femity and Charles, in which these judges have taken part in those decisions, and found that the question of a truly exceptional circumstance still evades judicial review. Absent there being legal error. Absent legal error, correct. Although the petitioner argues that liberal right applies, it does not. There is no statutory standard for this court to apply. Petitioners seem to invoke section 1229AE, which is the definition of exceptional circumstances, and that does not apply to this situation. It only applies to motions to reopen in absentia removal orders. In addition, section 8USD1103A gives the Secretary of Homeland Security the authority to promulgate regulations. That's where the authority to create the motion to reopen regulation comes from. And that also does not contain any standard that this court could apply. And indeed, the sua sponte vehicle has always been discretionary and has never been subject to review. Except when there's legal error. Except when there is legal error. And there is not legal error in this case. So addressing my notes as to what the petitioners say is legal error, they say that the truly exceptional situation is a legal standard that this court can review. And again, as I just addressed, it is not. And, okay, so then also they say that there is, they seem to imply that there's not a sufficient explanation in the board's decision. But as petitioners acknowledge, legally there are aliens arriving at this country's border and they do not have a due process right to, well, first of all, besides that, there is not a due process right to sua sponte reopening. That's a purely discretionary form of relief. And so there's not a liberty interest in obtaining sua sponte reopening. And so the- Counsel, can I just direct you to, you started talking about their lack of sufficient explanation argument. Before you move on to your other points. As you acknowledge, we can review decisions about sua sponte reopening for legal or constitutional error, colorable claims of legal or constitutional error. And one of the questions I have for you is how is it possible for us to do that review to see if there was a colorable legal or constitutional error, if there isn't a sufficient explanation. And when I read the BIA's decision here in the paragraph that I shared with your opposing counsel, the decision basically says we've reviewed the record and we conclude that we're not going to grant sua sponte reopening here. And it doesn't really provide any more explanation than that. And so how are we, as the reviewing court, then supposed to do the legal constitutional error analysis in your view? Yes, Your Honor. I think that Finley is instructive on this, as well as Thompson. The legal error needs to be evident on the face of the board's decision. It can't be something that the court needs to dig around in the facts and interfere with the board's discretion to find. So the example of Thompson is a good example. In that case, the court observed that the board had completely departed from a settled course of action in adjudicating parole waivers. And in that case, there was clearly a certain approach by the board to consider pardons by state boards to be sufficient for parole waivers. Pardon waivers, excuse me. And the board in that case said that the pardon waiver by the, I think it was the Connecticut Board of Pardon and Paroles. I think you're describing that case very accurately, and you're right that the error needs to be clear. But I think I'm asking you a different question, which is how can we assess if there's an error at all when there isn't really any reasoning provided by the board in granting sui sponte reopening? So I'm just wondering, how do you read the agency's decision here? What do you see as the reasons that they provided for denying sui sponte reopening? Sure, and I can get into that. The reasons, I do believe, are sufficient. But once again, since there is not a due process, there's not a liberty interest in pursuing this sui sponte motion to reopen. This is a creature of administrative grace on the part of the board. It's a completely board-created creature. Suppose that all they do in these for the next year or so is just say deny. They would be entitled to do that. They do not need to provide an explanation. In your view, it's incumbent on the petitioner to identify some reason to think there must have been legal error then. It's not sufficient for them to say, well, you haven't given any reason, so how do I know if there was legal error? That's your position. That is. So this court need not be blind. If the board provides a reason and it's clearly a legal error, then this court can correct it. And if it's evident from the papers filed below that it must have been relying on because that was the only argument the government made was legally erroneous, maybe then too. Right, perhaps. But then wouldn't your argument be a reason for the board going forward just to issue orders that say denied? Perhaps, and that would be within the board's right to do. It's the sui sponte. It's entirely within their discretion. They can have a truly exceptional situation, or they can even deny it if there's not a truly exceptional situation. Even if we remanded this case based on your reasoning, the board can say at this point, denied, and that's it. We're not going to exercise discretion. Correct, Your Honor. But it did already and then denied it without allegedly the explanation. So this board going back, or the immigration judge, would have to give an explanation as to why the arguments raised were not considered if we remanded, correct? Or would have to explain. If this court were to remand on the issue of sufficient explanation. The board can simply say denied. Now it's back and it has to resolve on the merits because already. If we were to say we remand for the purpose of addressing the medical issue of Ms. Hodzik, it would have to explain that. Unless this court makes a new rule that the board needs to start explaining its discretionary denials for it to review, then, yes, the board could just deny it on any grounds. Does the board sometimes deny it that way? Yes, Your Honor. But I do want to say if this court, if you're not buying that the board need not give an explanation, in this case they did and it was clearly sufficient. Even under their standard, which is truly an exceptional situation, they pointed to the fact that the motion to reopen occurred eight years after their second final order of removal in 2013. They noted that they had considered the current and prior motions, and so there had been a motion after Pereira that didn't include the applications for relief and was denied. They noted the ages and conditions of the petitioners. Contrary to what the petitioners said, the board did consider that. That includes their health conditions and also considered the ages and conditions of the children and their hardship claims. And in addition to that, stated that even if they had stated a prima facie case for cancellation of removal, they could still deny it. Counsel, where are you seeing them looking at the health conditions of the petitioners? So they didn't say the word health, but they said the ages and conditions of the petitioners, which in the context of the motion to reopen focused on one of the petitioners' health issues, I think. Will you just point me specifically to the language you're talking about? Okay, I'm on page 260 of the record. In the last paragraph, we have considered the respondent's record and current and prior motions to reopen and supporting documentation. We have also considered the circumstances, including the ages and conditions of the respondents, so that's the HODESC petitioners, and their children, and their hardship claims. Based on all the circumstances, we conclude that the respondent's case does not present an exceptional situation that warrants the exercise of our sua sponte, a reopening authority. So you think the word conditions there. Yes, and especially considering that the motion to reopen focused on Mrs. HODESC's health condition, I think that's what the board is referring to. And the board said that they considered the motions and the evidence submitted with the motions, so they were cognizant of the hardship to Mrs. HODESC and her husband and their children. But I would also like to point out that even if we lost on all these other issues and this court determined that it wanted to review the truly exceptional situation standard, which, as we said, through a whole line of cases, does not have jurisdiction over, the board has only reopened for a change in case law in one situation. That was a matter of XGW. Thank you. In a matter of XGW, the board reopened because the IRIRA created a new ground for asylum relief where the petitioners, or in that case, the move-ins, were clearly eligible for relief and had clearly not been before that. And in other cases, the board has rejected incremental changes in the law to establish a fundamental change in the law like that. So the board has not necessarily considered only the personal situation of the applicant. And in this case, it's not terribly relevant to their motion to reopen because the condition of the qualifying relative is what matters and what Congress cared about in creating the cancellation of removal. But wouldn't it matter to the children if one of their parents died because of removal? Oh, yes, Your Honor, that part, it would matter. It wouldn't be the primary. I mean, that would be part of the analysis as it pertains to the children. Right. I mean, that could be a very serious emotional harm to the children. Yes, I mean, I do agree with that. I agree. Thank you. If there are no further questions.  Thank you. Thank you. At this time, if the Petitioner's Council could reintroduce herself on the record. Yes, Melanie Shapiro for the Petitioner. Your Honor, at this time, I'd like to address a few points. One, the government is essentially asking us to peek behind the veil to see, to try and come to our own conclusion about why the board came to its conclusion to deny sui sponte reopening and simply stating that it considered the applications, the hardships, and the ages of the children, which interestingly mirrors the standard for cancellation of removal hardship determinations. It doesn't provide any sort of analysis why it's not enough. So I think that that continues to fail. Another thing is that the government says that we didn't provide any sort of argument regarding the motion to reconsider, but that was addressed in the reply brief. Essentially, the issue there is that the board just simply denied it as untimely. However, that was inconsistent with its own policy. In the practice manual, it says that the 30 days starts from the date the decision is issued or the date that it was mailed, which is going with the later date. Here, we didn't receive the decision until seven days after it was issued by the board. There was a delay there in matter of Isidro Zamorona. The board decided that and the UIR had indicated it will entertain motions to issue a final grant of cancellation if a case is stuck. There was a case at the board that was saying there was a case where it was one day late and that they should have considered equitable tolling, which is, of course, implied in the motion to reconsider before the board. We did explain the delay in receiving the decision. Additionally, there is a major problem with just saying, okay, well, if the board says to respond to denied, no reasoning that that's just fine, because that is not within the interest of justice. There is an interest in uniformity. There is an interest in reliability. Pointing to the one case, XGO, there is a major problem with just saying, okay, well, the UIR, as the only one that has found judicial review to no will for a denial of a motion to reopen sua sponte, is incorrect. As I previously stated, we only have very limited cases to look at or, I'm sorry, to grant new relief. We have very limited cases to look at. I've relied on unpublished decisions to try and show some subtle course of adjudication. I didn't provide all of the ones that are available, but it has been reasonable to assume that if you're newly eligible for a form of relief, if it wasn't previously available, if there's intervening case law, the practice has been to reopen to allow the person to then pursue that form of relief. Thank you, Your Honors. Thank you. Thank you, Counsel. That concludes argument in this case.